2008-12-25 Mr. Tulchin, if you are ready. Good morning, may it please the Court, my name is David Tulchin from Sullivan and Cromwell LLP in New York, and of course I represent the appellant Novo Nordisk. This appeal raises one issue and one only, an issue of claim construction. And the District Court- But it's in the context of the denial of a preliminary injunction. That's correct, Your Honor. High standard. Yes, except that this Court's law is quite clear that an issue of claim construction is reviewed de novo. And I think we've cited on page 3 of our reply brief a 2002 decision of this Court in the same context, State Access Floors Against Interface, 279 F. 3rd, 1357, that where a preliminary injunction decision turns entirely on claim construction, this Court's review is de novo. In fact, the District Court reached no other issue on the preliminary injunction motion. It was decided entirely on the Court's claim construction. But if we think that she had reasonable basis for her questions about claim construction, doesn't the high standard on reviewing the denial of a PI counsel for affirmance? No, Your Honor, I don't think so. Where the issue is purely one of law. There's no question about the facts here. The issue of claim construction was decided only on the intrinsic evidence. Okay, let's get to the patent bill. Thank you, Your Honor. I will. Don't we have gearbox all over this patent? And don't we have prosecution where the fact of the gearbox and the non-rotating rod are clearly part of the interpretation of the claims and urged in the prosecution? No, Your Honor, and clearly the specification refers to a gearbox. And there's no question that the two preferred embodiments that are set forth in the specification and in the figures include a gearbox. There's no dispute about it. The prosecution history, I think, is highly important. And, of course, any proper claim construction analysis should start with the claims themselves and the language of the claims. And if I can just pause there for a moment. Let me, if I could back up just a little bit before you. Yes, Your Honor. And I think we're heading in the same direction, but it seems to me probably, I don't think anybody would dispute this, but prior to, what is it, March 12, 2007, this patent clearly was directed to a gearbox invention. And so the claims... And the specification and the claims both talk all about gearbox. On March 12, 2007, canceled 12 claims, added a bunch of new claims for the purpose of including, so far as we can tell, of a broader description, wrong word, a broader set of claims. The amended claims, your view is the amended claims covered something that went beyond the scope of what was specifically described, at least in the embodiments, in the specification. Well, yes, except... So that's where we are, right? There's no dispute that the specification discloses a clutch. Sanofi Aventis says that. It's in columns four to five. We say it. A clutch is disclosed. Sanofi Aventis actually circled the clutch... Right. ...for the district court. What it doesn't at least specifically call out is a no-gearbox type device. That's right. In that sense, it's like Liebel. It is like Liebel. Right. And, your Honor, I want to come to Liebel, which I think is critically important here, as with the Saunders case, both of which your Honor wrote the opinion in. But if I may first say this, there was no dispute in the district court, and there's none here, that using the ordinary meaning of the claim terms meant that the Solastar device, the accused device, infringes. The testimony of Sanofi's expert was clear on that. It said A4138-39 in the record. Sanofi's expert said that if the ordinary meaning of the terms of the claims is employed, Solastar infringes, and there's never been any dispute about that. I just want to pause for a moment with the basic black-letter law, that there is a heavy presumption that the words of a claim should be given their ordinary and customary meaning, and that that presumption can be overcome only if the patentee acted as his own lexicographer to supply special meanings, or, using the words of the Telefax case, the patentee used, quote, expressions of manifest exclusion or restriction, representing a clear disavowal. Mr. Tolchin, we know what the law is, in fact. Yes, sir. You've just pointed out, at least one of us has written a fair amount of what you've just described. Correct. The real question is what the specification and the prosecution history tell us. Yes, and let me address that, if I may. The prosecution history, according to the district court, this is A-56, the district judge said, sheds no light on the claim construction issues in front of us, and with all respect, that was highly incorrect. It is clear that what happened was that in 2007, Novo Nordisk amended the applications, and the way Sanofi described the amendments is that Novo abandoned the direct gearing and gearbox that were the foundation on which the 278 patent was based, that's A-2797, and Novo said as well, sorry, Sanofi said as well that Novo focused instead on a clutch mechanism. That's also a quote from 2789. We agree with that. This happened after the inventor saw the published application for Solastar and said, that's my invention. His testimony is at 3948 to 3949. But of course, we're reviewing a district judge's decision. Correct, Your Honor. And she said, thus the specification repeatedly refers to a gearbox as a necessary structure in discussing how the patent's objective could be obtained and in describing the invention in further detail. She later says, this court believes that Sanofi has raised substantial questions regarding whether the specification read as a whole suggests that the very character of the invention requires direct gearing and a non-rotatable piston rod to be part of every embodiment. Doesn't that constitute justification for not granting preliminary injunction? In other words, questions remain. No, Your Honor, for two reasons. Questions remain. No, Your Honor, for two reasons. One, with all respect, the district court was wrong about what's in the specification. And secondly, this is the libel-Florschein case. It's on all fours with the 2004 decision in libel-Florschein. What Sanofi says is that this is a court's assignment. And you hope it doesn't turn out to be on all fours with the later decision. No, sir. It is not. You want the good, but you don't want the bad. Well, that's right, Your Honor. We're not here to discuss validity. Well, but it lurks. And in fact, one of the problems that we have in these kinds of cases is that when somebody comes in with a claim that substantially, I won't speak to this case, but in libel, the conclusion was it substantially overran the scope of the written description, then invalidity followed. You got your claim, but— I understand the point, Your Honor. And that's an argument that we're prepared, of course, to address at the appropriate time. But Column 2, where, Judge Lori, the focus is on Columns 2 to 3, the focus that Sanofi has. And it's important to start with Column 2, Lines 7 to 8, which says a traditional gearing is preferred. That's how Column 2 starts. Later it talks about the objective which can be obtained, the word is can, C-A-N, not must, by an injection device which includes a gearbox. Later on in Column 2, right at the end, going over to Column 3— But is there any other description of how it can be obtained without the gearbox? Yes, Your Honor. The clutch mechanism at Columns 4 to 5 using threading as well. And, of course, there is criticism of threading alone. But the claims, Claim 1, says no gearbox. There's never a mention of gearbox. And Claim 2, right after, which is a dependent claim— Well, that's the strongest argument, that the word gearbox doesn't appear in the claim. It does not. And, again, this is libel flarshine, which distinguished SINED almost exactly in situations like this. And where is the clutch in Columns 4 and 5, you said? Yes. It starts, Your Honor—the word clutch isn't used. Yeah, that's why I'm having trouble finding it. It's not. But the language used in Column 4 is coupling. That's at Line 53. Also at Line 67, the last line. And the paragraph that begins at Line 51 of Column 4, and then going all the way over to Line 50 or so of Column 5, refers again to the clutch. Sanofi highlighted— Oh, it doesn't refer to the—where is that? The word clutch isn't used. Right. We're talking about coupling, okay, which everyone agreed in the district court was a reference to the clutch. Sanofi circled and highlighted Item 21 in Figure 1. When I go back to Column 3, I see references to coupling the gearbox. Yes, but now we're talking about something entirely different, Your Honor. The clutch references come up beginning in Column 4 with the word coupling, and there's no requirement there. The specification never says that there's a requirement that there be a gearbox with it. The Symed case is important because there at page 1343 of 242F3rd, this court, Judge Bryson, said that there was no prosecution history pertinent to the claim construction issue. And with all respect, the prosecution history here is very clear, as Sanofi says, that Novo abandoned the gearbox requirement in most of the claims, not Claim 2. If you'll volunteer rebuttal time, would you like to save it or continue? Yes, I would, Your Honor. I think we know what you're arguing, and we'll give you your three minutes back. Thank you, sir. Mr. Berghoff. Thank you, Your Honor. We are here— You're going to get your argument in GIA 2. Thank you, Your Honor. We are here on the denial of a preliminary injunction. We're not here on the grant of summary judgment of non-infringement or something where clearly everything would be de novo. But it does depend on claim construction, doesn't it? It does depend on claim construction, but the issue is nonetheless whether substantial questions concerning non-infringement have been raised. Judge Cooper clearly laid out a proper legal framework for addressing claim construction, and she reached the conclusion that in her mind, in her discretion, she believes there are substantial questions, and we believe that the record below supports that. What if anything is happening at the trial level now? Is anything happening at the trial level? No, by agreement of the parties, it's stayed, and so we expect when— She's waiting for a report from us about claim construction. Yes, she's waiting to get the case back. The pretrial claim construction that district judges and counsel like to see from us. I think they all perhaps hope for that, but they're happy to just get the case back. We're the only ones that are uncomfortable with it, apparently. Yes. So there is a heavy burden on this, and it does need to rise to the level of abuse of discretion. And at least two bases, and the two bases work together, support her. Well, wouldn't it be an abuse of discretion if she were clearly wrong on claim construction? I believe this Court has, for example, found that if you ignore an express definition of a term and go the other way, that that may be a reason to— But an error of law. Or an error of law, yes. Includes claim construction. Yes, but it's more of, if I can go back to the last argument on the last case, this is at best talking about the application of law to what this specification says. You don't want to abuse patent law with the statute. I respect that knowledge based on several orders of magnitude, so I will retreat on that. But in this case, the specification says two things very clearly. First, there is clear criticism of prior art ways of linking the injection button to the business end of the pen, the needle and the piston. First, threads are criticized. And not just in the abstract. There's a specific reason given why threads should be avoided. Because, as the spec says, when you use a high-pitched thread, so this means now the threads are actually separated from each other more, that the large surfaces between the threads rub against each other more and cause friction. And so now, although the goal of the patent is to reduce the injection force that the patient needs, if you use threads, you're losing that advantage. And the exact language is it says most of the force is lost through friction. So it's a clear statement. Don't go down the thread path. And there's no question that SoloStar has threads, not gears. But it doesn't stop there. It criticizes what I'll call traditional gears that were used in the prior art to connect the injection button to the piston. And it said those gears in that particular prior art patent had the possibility of coming out of contact with each other. The teeth in the gears would come out of contact with the notches. And that could cause clashing. So the patent is very clear that that's a problem. Don't do that. It then is clear in the positive when it says what characterizes this invention is the provision of a gearbox in an injection device. And that fact pattern, that general fact pattern, criticism of the prior art, coupled with a positive statement of what the invention is, is the type of fact pattern that in a number of cases we've cited in our brief, I'll just mention Honeywell, VITT, Ornco, Boss Control, Scimed, which has been mentioned before, Gauss. In each of those cases, there was criticism of the prior art, extolling the virtues of a specific named invention in the specification, and that combination of facts, sometimes with prosecution history comments as well. Let's talk about the category of cases, which it seems to me this is a candidate at least. Perhaps it's undisputed that it falls in this category. But the category of cases that we were discussing before, in which it appears that the patentee in the middle of prosecution has decided to broaden the scope of the claims in order to capture a device that's out there. Now, it seems to me almost artificial to then go back and look at evidence prior to the amendment and ask what is the scope of the ultimate patent, where what you've got is, by clear indication of the patentee, of the applicant, an intent to broaden beyond the scope of what was specifically called out in the written description, and perhaps even, if we start to get into validity problems, beyond what was even disclosed in the written description in any way. Now, is it your position that suppose that the March 12, 2007 amendment, with the cancelling claims and adding all the new claims that didn't mention Gearbox, at least in claim one, suppose that, as a first paragraph, the applicant had said, we have spotted a device that's out there and we want to make sure and cover it, so we are hereby getting rid of any suggestion in the claims that it's limited to Gears. Would that, in your view, have answered the question of claim construction? Setting aside validity, would that have made it perfectly clear that that claim had to be construed not to include Gearbox? No. Two reasons. So even if the party said, this is absolutely what my claim means, it is what it means, then they couldn't have it, is what you're saying. That's correct, because claims are always interpreted as part of the specification. The specification does not change, no matter what statements are made. Interpretation, interpreting in terms of the specification, isn't that looking to the specification for enlightenment as to what the claims mean, as opposed to handcuffing the capacity of the patentee to indicate a broader intention? It seems to me you're saying the latter, not the former. No, for two reasons. First, there is a clear, actually several, disclaimers in the specification, disavowals of claims scope. And I believe this Court's case law is clear, starting with the Phillips and Bach decision, that says that an inventor's intention expressed in the specification as to correct claims scope is regarded as dispositive. And this Court has ruled on several other disclaimers. In the Honeywell case, the AstraZeneca, the Mutual case, and other cases cited in our briefs. And when you say in words or in substance, as this Court has made it clear, you don't have to use a magic formula for a disavowal, when you convey to one of ordinary skill in the art that my invention is not X, is not threads, is not the use of traditional gears that come in and out of alignment, it doesn't matter what you do to the claims after that. You, I believe, under this Court's case law, are stuck with that disclaimer. Do you have a case... That's the first reason. Do you have a case that falls into the scenario that I've described, where there's very clear indication of intention to broaden the claims, post-spec, and in which the Court has said you can't have it, no matter how clearly you've spoken? We did cite for that proposition, and I believe it quotes Simon, although the facts are not quite... Simon, I don't think Simon gets anywhere near where you need to go. The facts are different, but the proposition of law, I believe, is correct, and it's from the Honeywell ITT case, that where the written description clearly identifies what his invention is, an expression by a patentee during prosecution, that's your hypothetical, that he intends his claims to cover more than what his specification discloses, is entitled to little weight, and that the jump site for that is 1319. So I believe the case law does support the proposition that I just described. The second basis is just straightforward claim interpretation. The claims require the concept of injection, it's also called dose administration in some of the claims, and drug delivery. But, of course, these are claims directed to injection devices to deliver or administer drugs through a needle to patients. And there are hooks in the claim, sufficient, we believe, under this court's case law, to bring in gearbox, very clearly, because each of these claims in the patent still specifically requires and defines the structure of the injection device by its functional limitations during injection. And the patent specification makes it very clear that gearbox is essential to injection. And, indeed, the experts on both sides agreed to that as well. But, more importantly, the specification, in the key phrase that the parties have focused on in column two, states, which injection device is, according to the invention, characterized in that a gearbox is provided, which provides a gearing between the axial movements of the injection button and the nut relative to the housing. Now, the nut, we were told just a few phrases above, is part of the piston, which then drives the medicine out. So, for both of those reasons, the disclaimer... Is that what's called the preferred embodiment? No, this is not, in our view, no. These two paragraphs, starting in column two at line 42 and continuing on down to line 65, these paragraphs are defining the invention. These are clear statements, as we've seen in many of this Court's cases, where the applicant is saying, the invention is. And this Court has said, we take the patentee at his or her word. Well, I see that with respect to the first paragraph. I mean, it says it's the objective, so I presume they're talking about the invention. I don't quite see that with the paragraph that follows. Well, it starts out with this. I'm sorry, where are you reading? I've lost you. The paragraph that follows. At 50? At 50, yes. So that's focusing on the non-rotatable piston rod. Yes, that is part of the paragraph that starts at 50. But when that paragraph starts, this can be obtained by an injection device. Well, it's talking about the objective of the invention in the paragraph below. Which was described as an objective. Yes. But not necessarily the only. Well, it's the only one mentioned. Right, okay. And then the punchline, if you will, in the paragraph beginning at line 50, and this is at line 60, says, which injection device is, according to the invention, characterized in that a gearbox is provided. Then, and I think this sheds light as well, the next paragraph now introduces for the first time the language in a preferred embodiment. So now it's a clear signal to the reader that we're talking about a preferred embodiment. And what's the preferred embodiment it's talking about? Well, a specific preferred embodiment for the gearbox. Are there other non-preferred embodiments that don't use the gearbox? No, none are discussed. There is no discussion of, for example, a clutch-only embodiment. And the section of text in column 4 going over to column 5 that the plaintiff's counsel referred to refers throughout there to the gearbox being what provides the connection. So it's not a clutch alternative to a gearbox at all. What do you think claim 2 adds to claim 1, as you read it? If it were standing alone, Your Honor, it would support Novo's interpretation. The claim differentiation. The claim differentiation. It's not the strongest example. But I guess what I'm asking is there a way to bypass the claim differentiation argument on the theory that even setting aside the gearbox problem, claim 2 has other features? Yes. Okay. Why don't you walk me through what you see as being the difference. Well, I think the other features are clear. That talks about the coupling of the gearbox to the drive sleeve. So it's now defining where the gearbox is precisely, talking about a portion of the longitudinal force exerted by the user. Well, that's all just so that. I mean, that's all function, which is performed, I take it, by the gearbox in any environment. But our limitation is you would have to prove to infringe the claim. But I do concede that if this were standing alone, if this were the only evidence, the disclaimer was not in the specification, the statements, the clear statements in the specification were not there, that the invention is, in other words, this was a different patent, that claim 2 does support Novo's position. But this court's case law is clear that claim differentiation is not a hard and fast rule. It's not immutable. And it never overrides clear statements in the specification of disavowal or positive statements of what the invention is. So we would ask your affirmation. Thank you. Thank you, Mr. Berghoff. Mr. Colchin has some rebuttal time. Thank you, Your Honor. I appreciate your patience and attention. Judge Bryson, your question is the question that you answered in the Liebel-Florschein case, 358F3rd at page 903. Arguably, though, it's related to the question that was answered in Honeywell, only they gave a different answer. No, because in Honeywell, as in Symed, the specification made clear that all embodiments of the present invention, I'm reading from the Symed specification, all embodiments of the present invention Symed, I think it says, at least in this context, but I don't think that gets us anywhere. I think it does, Your Honor. And if I may, I know you're the expert here, not I, in the meaning of your decisions. But what you said at page 903, even if the original disclosure supported Medrad's contention that the invention as originally conceived required the use of a pressure jacket, you can substitute the word gearbox, the prosecution history makes clear Well, you're on Liebel now, not Symed. Yes, that's correct. That the patentee drafted the asserted claims specifically to cover injectors lacking pressure jackets. Now, Liebel is close. I was saying Symed is not close. Correct, Your Honor. I mean, it's not close because we think the prosecution history and the doctrine of claim differentiation both make crystal clear that the intention of the patentee here, which is what this court has said over and over again, is the purpose of looking at the intrinsic evidence to find out what that intention was. The intention of the patentee here clearly was to broaden the claims in 2007 and to go to the claims that the patent office thought it was issuing the notice of allowance makes clear that the invention now was, in the asserted claims, a clutch that releasably couples the dose dial sleeve from the drive sleeve. Those were the claims that the patent office issued, those asserted claims, and claim two and the other dependent claims that add a gearbox make crystal clear that when it comes to claim construction, the intent here was to, as Sanofi itself said, abandon the requirement of a gearbox and focus on a clutch. For that reason, we think the district court's claim construction was in error and should be vacated.  Thank you, Your Honor. I commend the review. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock.